**Hardiman License**

*Samuel Glantz,* for appellant.
*William Eastburn, 3rd,* for Commonwealth.

MONROE, J., March 12, 1970.—This is an appeal by Terry Hardiman, of 275 Indian Creek Drive, Levittown, Pa., from an order of the Secretary of Revenue of the Commonwealth of Pennsylvania, dated January 20, 1965, suspending appellant's operator's license for a period of one month commencing January 27, 1965, for an alleged violation of section 1028(a) of The Vehicle Code. The appeal has been made a supersedeas. The hearing de novo on this appeal was held April 30, 1965, before the undersigned. The alleged violation occurred in Philadelphia on Roosevelt Boulevard in the presence of Officer Francis Agnew, of the Fairmount Park Guard. The officer did not appear at the hearing before us. It was stipulated by counsel for the Commonwealth and counsel for appellant that if the officer had been called as a witness he would have testified "that approximately 5:45 a.m. on June 9, 1964, on the Roosevelt Boulevard at the intersection of Red Lion Road in Philadelphia that the appellant did go through a red light at that intersection while driving a tractor-trailer." It was also stipulated that the area in which the alleged violation occurred was not built up; that appellant was prosecuted for the alleged violation but did not attend the magistrate's hearing thereon, mailing to the magistrate the appropriate fine and costs. Appellant testified on his own behalf. From his testimony, the stipulations above mentioned, and the portions of the appeal petition which were admitted in evidence, the following facts appear.

At 5:45 a. m. on the morning of June 9, 1964, the weather was clear, the roads were dry, it was just turning from darkness into daylight. Appellant was operating a tractor with fully loaded trailer for Three A Trucking Company in a westerly direction along the Roosevelt Boulevard. He was operating the tractor-trailer at a speed of 30 to 35 miles per hour, in a 40 mile per hour maximum speed zone, in the middle lane of a three-lane westbound portion of the boulevard approaching the intersection of Red Lion Road. As he approached the intersection, the traffic control signal light was green in his favor and he was prepared to cross the intersection. When the tractor-trailer was approximately 40 feet from the signal lights, a car passed the tractor-trailer on the left and suddenly swung in front of the rig and stopped as the traffic signal facing appellant turned from green to yellow. Appellant applied his brakes but seeing that he could not stop in time to avoid striking the vehicle ahead of him, he steered his tractor-trailer to the left and came to a stop in the middle of the intersection of the boulevard and Red Lion Road. It would have taken considerable moving to back the rig out of the intersection as the same was on an angle in the intersection; therefore, although the traffic signal had now turned red as to traffic on the boulevard, in order not to continue to block the intersection, appellant pulled his rig across the intersection and stopped, and then reported to Officer Agnew.

Appellant did not attend the magistrate's hearing on the prosecution for the alleged violation because it would have meant for him the loss of a day's work. Appellant had been driving a truck for a period of four years prior to the alleged violation, covering each year in truck driving approximately 30,000 to 32,000 miles, and 8,000 to 18,000 miles in private driving. His driving record discloses that in September and

October of 1963 he had also violated section 1028(a) of The Vehicle Code and received from the secretary warning letters in respect thereto.

Section 1028 of The Vehicle Code provides, insofar as pertinent, as follows:

"(a) It shall be unlawful for the driver or operator of any vehicle . . . to disobey the directions of any traffic signal or . . .

"(b) Whenever traffic at an intersection is alternately directed to stop and go, by the use of traffic signals, the colored lights shall indicate as follows. . .

"(1) Green.—Traffic facing the signal may proceed straight ahead, . . .

"(2) Yellow-When Shown Alone.—Traffic facing the signal shall stop before entering the nearest crosswalk at the intersection, but if such stop cannot be made in safety, a vehicle may be driven cautiously through the intersection.

"(3) Red.—Traffic facing the signal shall stop before entering the intersection, and remain standing until green is shown. No movement or turns shall be lawful on red except as otherwise provided in this section."

The evidence in this case is entirely inadequate to justify the suspension of appellant's operator's license. There is no evidence as to the width of Red Lion Road at the intersection or as to the position of the traffic signal, that is, whether it was an overhead signal in the center of the intersection or was posted on the east side of the intersection or west side thereof; consequently, it cannot be determined where appellant's tractor-trailer was with reference to the intersection at the time the other vehicle pulled in front of him and suddenly stopped, the only testimony being that of appellant that when this maneuver by the other vehicle occurred, the tractor-trailer was approximately

40 feet from the traffic light. It may very well have been that had the other car not blocked the lane in which appellant's tractor-trailer was traveling, appellant could have traversed the intersection before the change of the traffic signal from a green to a yellow light. In any event, it appears from appellant's testimony that he could not have stopped in safety in response to the yellow signal because he would have collided with the passenger vehicle had he attempted to do so. Section 1028(b)(2) requires the operator to stop in response to a yellow light only if that can be done in safety and when it cannot be done in safety, it is permissible for the vehicle to be driven cautiously through the intersection.

Appellant admits that after his vehicle came to a stop in the intersection, a red light was then controlling traffic on Roosevelt Boulevard and that in order to clear the intersection, he thereupon proceeded through it on the red light. This, at most, was a technical violation, but it cannot be overlooked that section 1021 (1) prohibits a vehicle, whether attended or unattended, to stand within an intersection. If there was any violation of The Vehicle Code by appellant, the evidence fails to establish that it was intentional or due to inadvertence, carelessness, recklessness or negligence upon his part. The most that may be said for the Commonwealth is that the violation, if any, was technical, and does not justify the suspension of appellant's operating privileges. Accordingly, we enter the following

## ORDER

And now, March 12, 1970, the within appeal is sustained and the order of the Secretary of Revenue dated January 20, 1965, suspending appellant's operating privileges for a period of one month, is reversed.